MANN, Judge
(dissenting).
Abraham Lincoln is said to have remarked that calling a dog’s tail a leg doesn’t make it a leg. Judges seeking legislative intent should heed this bit of executive wisdom.
This judgment is supported not by facts, but by words. The facts are not in dispute. Several cars were being moved from the railroad’s Ucet'a yard, on the east side of Tampa, and all but one were dropped off in the area of the Union Station. That one, destined for Swift and Company, at least a mile and half from the site of this accident, was attached to a switch engine taking it more than ten miles from the yard into which it was initially brought.
Viewed as a question of admissibility of the “admission,” I can 'concur with by brother Hobson. During the presentation of the plaintiff’s case it was proper to bring out any admissions of facts, and these, under Florida law, may stand for proof of the facts admitted. See Wilkinson v. Grover, Fla.App.3d 1966, 181 So.2d 591. On direct examination, Officer Felt-man was asked, “Did he tell you that train was switching at the time ?”, to which Feltman replied, “Yes, sir.” The question was perhaps objectionable, but no objection was made. In any event, it was then no time for the defendant to put on his case. On cross-examination, defendant’s lawyer asked Feltman, “Do you recall what it was that the conductor said to you about the train?” “With what respect?” “With respect to anything he had to say to you?” “Yes, sir. I asked Mr. Gibson if this was enroute to St. Petersburg or exactly what the operations were and he said that they were — I asked him if they were in the process of a switching operation and he said yes, that they were!’
Here is where the police officer, by suggesting a dichotomy between an inter-city run and a switching operation put into the conductor’s mind an affirmative response to the question whether he was engaged in a “switching operation.” Gibson’s response was natural. He wasn’t going to St. Pe-tersburg.
I reject the notion that a train conductor can amend a statute by responding predictably to a leading question asked by a policeman. And any construction of the statute which would make a “switching operation” as defined in the statute out of the conduct of these trainmen would be ludicrous. If there were an obligation to bestow a pair of fusees on every street crossed enroute from the Uceta yard to Gandy Boulevard, the railroad would have to have a man in a hand car precede the train casting out fusees like a flower girl at a wedding. The plain intent of the Legislature was to make it necessary for the railroad to place fusees whenever, at night, it blocks a crossing either by a stationary train or one moving back and forth across the unsignaled grade crossing.[1] The placing of fusees at crossings which the train was merely passing enroute to a “switching operation” would suggest danger where it had passed, and would ultimately condition motorists to ignore the warning where the danger was present.
If one examines, in the abstract, the admissibility of an “admission” sufficient on *454 its face, he might be led to affirm this judgment on purely doctrinal grounds. The error came, in my opinion, when the trial judge denied a directed verdict, because any verdict for the plaintiff in this case would be contrary to the manifest weight of the evidence. The plaintiffs’ very able lawyer conceded that his sole proof of negligence consisted in the admission of “violation” of the fusee statute. Plaintiffs were at liberty to show that in fact there was an operation in progress which would block Himes Avenue, but they didn’t, and couldn’t, and they admitted that they couldn’t. Thus, a verdict should have been directed for the simple reason that there is absolutely nothing in this record to support a verdict for the plaintiffs once the fusee statute is properly construed and the phrase “switching operation” is shown beyond question to have been used by the conductor in a sense other than that intended by the Legislature. See 7 Wigmore, Evidence § 1972.

. Fla.Stat. § 357.08(1) P.S.A. (1967) : “Whenever a railroad train shall engage in a switching operation or stop so as to block a public highway, road or street at any time from one half hour after sunset to one half hour before sunrise, the crew of such railroad train shall cause to be placed a lighted fusee or other visual warning device in both directions from such railroad train upon or at the edge of the pavement of the highway, road or street to warn approaching motorists of the railroad train blocking the highway, road or street; provided, this section shall not apply to railroad crossings at which there are automatic warning devices properly functioning or at which there is adequate lighting.”